Sibley, Cherrington and Russell, JJ., of the Fourth Circuit, sitting in place of the judges of the First Circuit.

### MEMPHIS & CINCINNATI PACKET CO. V. BRITTON.

1. MASTER LIABLE TO SERVANT INJURED BY CONTINUING IN DANGEROUS EMPLOYMENT UNDER COERCION.

Where a servant in the discharge of his duty finds himself in a perilous position in view of some defect discovered or peculiar danger suddenly apparent to him, and the master, after notice thereof given him by the servant, commands him to go on under such circumstances that the servant reasonably may and does understand that he will be discharged unless he proceeds, the servant is under coercion, and in such case the master assumes the responsibility for the injuries resulting from a faithful discharge of the duty.

2. PETITION IN ACTION FOR INJURIES TO SERVANT RESULTING FROM CONTINUING IN DANGEROUS EMPLOYMENT UNDER MASTER'S COERCION SHOULD ALLEGE, WHAT.

A petition in an action by a servant against the master for damages resulting in the course of the employment by reason of obeying the commands of the master to go on with the work, after notice to the latter of its apparent danger and remonstrances of the servant, which fails to allege that the servant believed from the nature of the command and the circumstances under which it was given that a refusal to go on would result in his discharge, is subject to demurrer.

3. SERVANT ASSUMES RISK OF DANGEROUS EMPLOYMENT.

Where a servant is aware of the danger of the situation, and advances with the work without a promise on the part of the master to supply what is demanded for his security, he assumes the risks of the employment, and any degree of care on his part in its performance will not excuse him.

4. NOT NEGLIGENCE TO FOLLOW GENERAL CUSTOM, WHEN.

It is not negligence for a master to command the servant to go on with his duty in a manner which is the general custom in such work, and of which the servant had notice and had done in the same manner before without injury, unless a peculiar danger arises which is communicated by the servant to the master and a demand made for the proper precautions to be made for safety.

5. MASTER NOT LIABLE FOR ERRORS OF JUDGMENT, WHEN.

Where the master has furnished a competent foreman, who is conducting the business in the fair exercise of a capable judgment, and a question arises of opinion merely, the master is not responsible for a simple error of judgment.

6. PROCEEDING IN UNUSUAL MANNER, QUESTION OF NEGLIGENCE FOR JURY.

Where a servant, in the performance of his duty, proceeds in a manner and with instruments which are known to him to be unusual in such cases, it is a question for the jury to determine whether the manner of doing the work and using the instruments was the cause of the injury.

7. CUSTOM NOT CONCLUSIVE WHEN QUESTION OF NEGLIGENCE ARISES, BUT MAY BE CONSIDERED.

That the master followed the usual and ordinary practice of others engaged in the same work, in the performance of which a servant is injured, is not conclusive that it was the proper way to do it, but such custom or practice is proper to be considered by the jury.

8. CHARGE OF COURT SHOULD BE WITH REFERENCE TO TESTIMONY.

Where the vital parts of a case are not merely in what is put in issue by the record, but on questions that arise upon the testimony in connection with the law which applies, it is with reference to the latter that the court should instruct the jury.

9. SPECIAL INSTRUCTIONS COVERED IN GENERAL CHARGE MAY BE REFUSED.

Where the jury has been instructed in a pertinent and adequate form on the law applicable to the case special instructions which have substantially been covered by the general charge, or which are irrelevant, may be refused.

Johnson & Levy and William H. Jones, for plaintiff in error.

William Littleford, for defendant in error.

SIBLEY, J. (Orally.)

This case comes here by petition in error seeking to reverse the judgment of the trial court.

The primary ground averred is the overruling of the demurrer to the amended petition. Beyond that, error is alleged in respect to interrogatories submitted, but this went out on the hearing, in view of the circumstance that they were not so submitted so as to enable the company to avail itself of what was done with regard to them.

Errors are alleged in respect to charges given and refused; and finally, that the verdict is not sustained by the evidence.

I take the matters we deem it necessary to consider somewhat in the order stated, at least so far as the first averment is concerned. The case on its facts and circumstances, out of which all the alleged wrongdoing came, relates to a sternwheel steamboat owned by this packet company, and upon which the defendant in error, plaintiff below, was a fireman. It became part of his duty in that capacity to aid in tightening the stirrups which bound the paddles to the arms of the wheel. The carpenter of the boat was his immediate superior, under whose control such work was done. At the date alleged in the petition he was directed and commanded (it so puts it, although I don't think that makes any material difference), to proceed in the discharge of his duty. The boat was lying at the wharf. The wheel was held rigid by proper management of the machinery, and

he was ordered to go upon it and tighten up the stirrups. That could be done standing on the paddles with some of the stirrups, by reaching to, and simply turning the nuts with a wrench. When it came to the top paddles, as the wheel stood, it was necessary for Britton to stand in on the braces and do the tightening. He proceeded to do this work, and in the course of it fell and met with serious injury. The cause of action set out in the petition is predicated upon what was thus done.

The first question is in regard to the mode of setting out the matter in the petition. The facts I have stated about the nature of the employ-ment—the carpenter as his superior; that he commanded him to proceed to this work; that Britton did so, and found the wheel in a condition in which he wished additional support in order to render him more safe, are averred. I will read an allegation at this point:

"Said paddles were slippery and covered with green moss, and it was dangerous for a man to stand thereon and work, and of this danger said Reasington (the carpenter, Britton's immediate superior) knew." It also alleged that it was his duty to furnish a certain plank called a foot board to be placed on the frame of the wheel for workmen to stand upon, and that he negligently, carelessly, and regardless of the safety of Britton failed to furnish such plank, paid no attention to his remonstrances, and commanded him to go on with the work.

Now, this is sufficient to show that Britton had become aware of the danger of his situation. Hence, under Coal & Car Co. v. Norman, 49 Ohio St. 598 [32 N. E. Rep. 857], he was put in a position where, if he advanced with the work without a promise on the part of the master to supply what was demanded for his security, he assumed the risks and would be barred of any recovery, it appearing, I say, that he himself saw the danger and understood what it was. Counsel have pleaded with a view to that case undoubtedly, and they have sought to bring themselves within another category. If making the law, as courts of last resort seem to be doing at times, I would declare it to be this: When a master is apprised of the fact that his servant is placed in a dangerous situation in the course of his employment, and he directs him to proceed, thereby the master should be held to assume the risk, unless it be shown under the circumstances in which he worked, the servant had been guilty of actual negligence contributing to the injury. But this is not the law in Ohio. We are not inclined to hold, however, that Coal & Car Co. v. Norman, supra, excludes the doctrine that where a servant finds himself in a peril-ous condition in view of some defect just discovered or peculiar danger suddenly apparent to him, and the master, after notice thereof, commands him to go on under such circumstances that he reasonably may and does

understand he must forego his employment or proceed in its execution, the servant is then under coercion; in which event the master assumes the responsibility for ill consequences that may result to the servant from a faithful discharge of his duty. Now, it is with a view to this class of cases that the averment, as to Britton's being commanded to proceed, was made. But the difficulty with the petition, in our estimation, is that it does not go far enough. It fails to allege what the evidence tends to show, and but for another reason possibly might be regarded as curing; that is, Britton's understanding from this command and the circumstances, that if he did not proceed he would be discharged. The petition simply says that he proceeded because he was commanded. When he did that, so far as respects the dangers apparent to him, he fell within the rules of the Norman case.

There is this difference between assumption of risk and the ordinary case of contributory negligence. When a servant goes forward in the discharge of dangerous duties, under such circumstances, that in law he assumes the risk, then no matter what his care, he is working at his own peril. The question of carelessness ceases to be important from that time on, so far as the liability of the master is concerned. Whether the servant becomes negligent is wholly immaterial to the result, because with the utmost care, if he gets hurt, he alone suffers the consequences. On the other hand, in the ordinary case of contributory negligence it must be shown that there was want of care directly contributing to the evil result. We think, then, in view of the fact alleged in the amended petition, that the plaintiff when commanded to go forward, did so; and it not being stated that this was on the understanding and belief, that if he did not so proceed he would be discharged, the averment simply of a command, in other words, does not distinguish this from Coal & Car Co. v. Norman, *supra.* The court below therefore erred in not sustaining the demurrer to it. That view, is not, however necessarily decisive here. On the evidence, circumstances appear that would authorize the submission of the question of coercion to the jury if the pleadings had properly presented it; and if there was nothing else in the record upon which to predicate error, we would allow an amendment to be made in conformity with what we presume to have been the finding of the jury in that regard. But as said already, the direction, or command, as it is stated here, to proceed, if obeyed, is not sufficient in itself to place the servant under the protection of the coercion doctrine. It must be shown by the circumstances, and what was said, that unless he went forward he reasonably believed he would lose his place. When that appears, with notice of the defects in the machinery, or of the special dangers of the situation, the servant may

proceed in reliance upon the proposition that the master has assumed the risk; and if in the exercise of proper care, under the circumstances of danger in which he is working, it won't lie in the mouth of the master when the servant is hurt, to say that he assumed the risk.

But there is another fact in the case which bars us from relieving the defendant in error, in the view suggested. The proof is overwhelming that the customary mode of doing such work on a boat of this kind, a stern-wheel boat, was to do it without the use of a foot board; that this had been the custom of Britton himself in the employ of this boat, and elsewhere perhaps, during years of river service; and if not universal, it was, to say the least, the general custom in doing that kind of work, standing on the paddles when the work permitted, and on the braces if working at the top paddles, as was being done when this accident occurred. The proof shows, I say, not only that this was the general custom—it was the custom which plaintiff below had followed, the custom this boat had always observed, the mode in which he had done such work previously on the boat; and therefore, as we conceive, in the absence of anything to show that some peculiar and unusually dangerous condition had arisen at the time this work was done, which was brought to the attention of the superior, it charged him with no negligence in directing the servant to proceed in that way. He might have furnished the foot plank as requested, but it seems to be very clear, that if he was proceeding according to the well known and customary mode of doing the work, he was not negligent in refusing it. In that case the servant assumed the risks by entering upon the service. The master was not negligent in requiring him to proceed in accordance with the custom, for the very good reason, that the test of prudence and care, in conducting work, making machinery, or furnishing appliances, is what people generally do who are engaged in such business. That is proof of a prudent and reasonable mode of transacting it, and if the master went no further than to require this of the servant, although accident befell the latter while in the discharge of his duty, equally would it be true that the master was not in fault. Hence injury would be misfortune to the servant for which no one is responsible. So, I say, this being the state of fact, unless it also appears that there was some peculiar danger which became apparent to the servant and was communicated to the master that laid the basis of a new demand for appliance to insure safety, the servant would be under the operation of the other doctrine as to the customary mode of doing the work, and could not charge the master with responsibility. Now, we don't think this evidence discloses any such condition. It does not show anything communicated to the superior that was not apparently an ordinary incident of

employment upon a wheel that had been used—which has on it a little moss and the slime that accumulates from use. This work was done soon after the landing of the boat, when the braces upon which they would usually stand were slippery, and therefore excited apprehension in the mind of Britton that he might fall. He called attention to the fact that it was slippery, and asked for a plank. He was directed to go on. The evidence shows that on second call he was informed if he would be careful he would not get hurt. On the facts disclosed then, there was nothing to take this case out of the customary mode of doing the work, and therefore nothing upon which negligence of the master can be predicated.

At that point the verdict is not sustained by the evidence.

It is alleged further, that the plaintiff was guilty of contributory negligence. We don't pass on this as a matter of law. There was enough shown to go to the jury on as to that.

When Britton got to his top place of the wheel, where it was the ordinary mode to put an arm over the paddle and work with one hand (and here is the pity of it—his whole action evinced a purpose to do his utmost) he found a nut that had become rusted, which could not be turned by one hand. Evidence is in the record tending to show that in such case the usual mode was to call for a mallet and loosen the nut by striking it, so that it could be turned with the wrench. Instead of this, however, Britton let go with the arm he should have used apparently for his protection, and with both hands on the wrench, used so much force as to break it. With the breaking he slipped and fell, the petition avers, in consequence of not having a proper appliance in the way of a safety plank. There is enough in this for a debatable contention at any rate, that the breaking of the wrench, when using it as a substitute for a mallet, and therefore in an extraordinary way, is the cause of the whole trouble. We don't say this is so as a matter of law—it is a question for the jury.

Charges were given at the request of plaintiff and defendant, and they asked a good many that were not given.

It is always proper for counsel on both sides to cover their case in every possible aspect by instruction. The court may not give them, and is not always bound to do so.

The general charge goes pretty well over the case, and it is supplemented by special instructions which were actually given.

The first instruction by the plaintiff's counsel we think is rather misleading. Even if the jury should find that the defendant did follow the usual and ordinary practice of others in doing the kind of work which was being done in this case, it is not conclusive that it was the proper way to do it, and such custom or practice, if any existed, is proper to be con-

sidered by the jury; yet the defendant was bound to supply the plaintiff with such materials to do the work, as an ordinary prudent man under such circumstances would use.

Now, if the first clause had been requested alone, there would have been no objection to it. The second clause has no relevancy to this case. It was not a question of supply in view of the indisputable evidence in regard to the custom. The latter clause that the defendant was bound to supply plaintiff with such material to do the work, as an ordinarily prudent man under such circumstances would use, therefore renders it bad.

The third is as follows:

"It is the duty of the master to provide tools and appliances fit for the purpose of the work which he directs the servant to do, and if he could have avoided the injury to the servant by the exercise of ordinary care in providing appliances to do the work, and there is no contributory negligence on the part of the plaintiff, then the defendant is responsible for any injury which occurs to the plaintiff by reason of his failing to provide safe appliances.

This is open to the same objection. It has no relevancy when the real rub of the case is taken into account, as it discloses itself, not in the record merely, but on the evidence. Often the turning points of a case, and it is so here, are not merely in what is put in issue by the record, but on questions that arise upon the testimony in connection with the law which applies; and it is with reference to them that the court should instruct the jury.

As stated, special charges first and third, given on behalf of the plaintiff, are bad. We find no ground of exception in anything else, except two charges that we think ought to have been given on behalf of the defendant.

Charge twenty-two:

"If the jury find from the evidence that the general rule or custom has been not to use the foot board when tightening the buckets on the wheel of a sternwheel steamboat, such finding should be fairly considered by the jury as indicative of the general sentiment or opinion of those engaged in the business, that such foot boards are not essential or necessary, and that the omission to use them would not be deemed or understood as negligent."

Now, that was a pertinent charge on the testimony introduced by the defense in this case. It should have been given, and it was error, we think, to refuse it.

Number twenty-four:

"If the jury find that the carpenter was an experienced and competent

person for the position he occupied under defendant, and that when his attention was called to the matter of furnishing foot boards, he duly and fairly considered the matter, and came to the conclusion that in his opinion or judgment foot boards were not necessary, the defendant is not liable for the mistake or error, if one there was, in his opinion or judgment, as to the necessity of such foot boards."

That simply brings into view the question of a fair exercise of judgment under the circumstances in one aspect of the case, and we think the defendant was entitled to it. When the master has furnished a competent man, and he is conducting business in the fair exercise of a capable judgment, where the question is one of opinion, for instance, as to whether it would be prudent to go on here without foot boards, the master does not become responsible because there was a simple error of judgment in that regard, as we understand the law.

We don't take time to go into detail about the other charges refused. The general charge with those that were properly given on both sides pretty fully cover the case. Counsel are not allowed to make up a volume and expect it to be read to the jury, by simply varying the statement of law in application to essentially the same matter. When it is once given in a pertinent and adequate form, the duty of the court in that regard is ended. It may refuse further charges that substantially cover the ground already properly instructed upon. That is the practice as we understand it.

Were it otherwise, where counsel were able on both sides, as they appear to have been in this case, and somewhat prolific in the production of literature in the way of legal instruction, they might compel a court to read to the jury a volume, the end of which would be to confuse rather than instruct it. There is reasonable discretion at this point left to the trial judge, with the exercise of which courts of review will not ordinarily interfere.

On the record as it now stands, then, we hold, first, that there was material error in this case to the prejudice of the plaintiff in error in the fact that the court overruled instead of sustaining the demurrer to the amended petition; secondly, that there was material error in the two charges given on the special request of the plaintiff below to which I have referred, and to which exception was made at the time by the defendant below; thirdly, that there is material error in refusing to give the two charges to which I have referred, specially requested by the defendant below, and which was refused; and fourthly, that on the record as it now stands, the verdict is not sustained by the evidence.